Thank you, Your Honors, and may it please the Court, my name is Benjamin Levine and I represent Ahud Chaziza in this Section 1983 action alleging that defendants, Nevada Department of Corrections officials, knowingly declined to properly calculate his parole eligibility date for over two years in violation of Nevada law, knowingly depriving him of a protected liberty interest and parole eligibility without procedural protections. I'd like to start by addressing this Court's question regarding the relevance of the Supreme Court's decision in Olam v. Wakinakona to this case. Simply put, Your Honors, Olam does not control here because it dealt with interests of a fundamentally different nature than those at issue in this case. There, the prisoner claimed a liberty interest regarding a hearing related to the location in which he would serve out a sentence, whereas a prisoner becoming parole eligible represents a fundamental change in his sentence status. As the Supreme Court itself has observed, bringing him from no ability to be even considered for parole to a real opportunity to gain his freedom sooner. This is why parole eligibility is a substantive interest of its own, not the mere process for process's sake with which the Supreme Court in other key considerations that likewise make clear that parole eligibility is a distinct and substantial interest entitled to constitutional protection. First, this Court's decision in Miller explicitly recognized a liberty interest in parole eligibility under Oregon law, even after finding... Isn't that distinguishable? Because Oregon says that upon the satisfaction of certain conditions, there will be parole. And that is different from what we have in Wesley said, that parole is always a matter of grace and that no one has a right to parole even under certain conditions. Doesn't that make Miller distinguishable? Well, Your Honor, in Miller, the Court looked to the particular statute that was before it and found that that statute did not create a liberty interest in parole release, left that issue of parole release there, and went on to find that nonetheless, notwithstanding that and notwithstanding Olam, there was a free... There was also a liberty interest in parole eligibility. But wasn't that because if you're eligible, then all you have to do is satisfy certain conditions and you will definitely get parole if you satisfy those conditions. Isn't that what Miller was all about? And doesn't that make it different from Novato? Your Honor, I believe that in Miller, the conditions were simply to allow the prisoner to become parole eligible and then have access to a parole hearing, which is fairly analogous to this case because the liberty interest in parole eligibility that Aziza is claiming would have changed his sentence status, bringing him from a place again where he... Let me try it one more time because I don't think I'm being clear. I thought in Miller, at the underlying parole hearing, we know that under Oregon law, if you satisfy certain conditions, you're entitled to parole. And that's not the case under Novato law. And therefore, doesn't that make a difference to how we view the error relating to parole eligibility? I understand, Your Honor. It shouldn't. The fact... It's correct that under Novato law, it does specifically disclaim a liberty interest in parole release. However, there's really no indication in the Miller decision that the nature of the parole release laws in Oregon were really central to the court's decision at all. And it really does appear to have independently concluded, regardless of no finding of a liberty interest in parole release under the specific statutes that the court analyzed, that there was nonetheless a liberty interest in parole eligibility. And there are other courts, including the Nevada Supreme Court, that have come to similar conclusions. For example, in Anselmo, as we discussed in our briefing, the Nevada Supreme Court found that even in light of the specific statute that we're discussing that disclaimed the liberty interest in parole release in Nevada, there is nonetheless a freestanding and independent liberty interest in parole consideration. Granted, it was a different statute, but it very clearly supports the principle that in Nevada, the fact that there is no liberty interest in parole release does not preclude the existence of other parole-related liberty interests. And moreover, Your Honors, the Supreme Court has, in other contexts, made clear that it believes that, excuse me, that it considers parole eligibility a substantial and important interest for prisoners, even in circumstances where prisoners have no legitimate expectation of release on parole, which indicates that in its decision in Olin, it did not make a hearing as to where a prisoner would serve out his sentence, geographically speaking, that that would not preclude the existence of freestanding liberty interests in parole eligibility. For example, here, Mr. Chorzisa ultimately did get his parole hearing, correct, after the law in Nevada was clarified with a published opinion, and the parole board denied him parole, correct? That's right, Your Honor. So really, your contention is that his only constitutional violation was that he should have learned earlier that negative decision from the parole board, am I right? Well, Your Honor, that assumes that the parole board would have come to the same conclusion had he had his parole hearing on the proper date two years earlier. And any reason to think they would not have come to the same conclusion? There's really no way to tell, Your Honor, and his easel will never know. Precisely on the appeal, what's the measure of damages? Well, Your Honor, as we've discussed in our briefing, and given that Olin does not preclude the liberty, excuse me, the existence of a liberty interest in parole eligibility, given the constitutional violations of both his procedural and substantive due process rights, at the extent that it could be a due set trial on remand, the jury could find that he's entitled to more. And given the substantive due process claim here, and the egregiousness of defendant's conduct in defying a clear order by the Nevada Supreme Court, making clear that they were obligated to apply statutory credits toward parole eligibility for prisoners like Aziza, contrary to their repeated claims, including during this litigation, that the Nevada Supreme Court's decision in von Sadowitz did not apply to other prisoners, they could perhaps even determine that he's entitled to punitive damages. But the fact is that at the very least, he's entitled to some damages, at a minimum nominal damages, which entitles him to a remand for trial, given the constitutional violations that he suffered, again, over the course of two years while in prison. So, Your Honors, given that Olam does not, as discussed, preclude the existence of a liberty interest in parole eligibility in this case, which again, aligns with the Supreme Court's treatment of parole eligibility in other contexts, it's clear that the district court erred in applying Sandin rather than the parole context under state law, and that Sandin only created an exception for internal prison regulations. It was therefore an error for the district court to apply the wrong standard, and had it applied the correct standard, it would have been clear, given the clear mandatory language in Nevada Revised Statute Section 213131, requiring the NDOC to calculate prisoners' parole eligibility dates, and then to transmit those parole eligibility dates to the parole board, which they did not do here because they refused to properly calculate his parole eligibility date, that he had a protected liberty interest in parole eligibility under Nevada law, and accordingly, that he was entitled to procedural protections before, or upon the deprivation of that, which defendants did not afford him, despite being repeatedly notified of the fact that he was experienced suffering a constitutional violation, and even attaching a copy of the Nevada Supreme Court's order, very clearly laying out the criteria for determining which prisoners were entitled to the benefit of Section 20944657B. So that being the case, he not receiving any additional procedural protections after that, they violated his right to And moreover, again, given the egregiousness of the violation here, and the clear flouting of the law that they knew to be the case, and that Aziza had repeatedly informed them of, he experienced a substantive due process violation as well. They were deliberately indifferent to his due process rights, which under these Supreme Court, making clear what he was entitled to, and they refused to follow it. So your honors, I see that I'm at time. So unless you have any further questions, I will reserve the rest for my colleague on rebuttal. Thank you, counsel. Let's hear from the Attorney General's office. Good morning, your honors. This is Frank Tawdry, Senior Deputy Attorney General for the state of Nevada. I'm here representing the appellees, the Nevada Department of Corrections, and its three employees for the state of Nevada. We'd also like to thank the UCLA Law School Clinic for entering this case. It's been a pleasure to work with you. I've worked with them, as well as the colleagues from Horvitz and Levy. Now, we are here specifically on whether the district court in the state of Nevada properly granted a summary judgment to the NDOC on Ahuja Aziza's 1983 due process claims. Because the inquiry is purely legal, we are here on the DeNovo standard. There are two primary issues I'd like to discuss today, and several tangential issues if time arises. First, I would like to discuss the notion that NDOC was put on notice under the Nevada Supreme Court unpublished Von Seidrich case. Second, at this court's directive, I'd like to provide an analysis under Olin and its progeny as to why Aziza did not have a liberty interest in this case. And third, if time permitting, we would provide a statutory analysis of the sentencing statutes at question. We are respectfully asked this court find the state was entitled for two reasons. First, we were barred by Heck v. Humphrey in that the claims sought damages related to time computation. And second, there was no liberty interest at stake, whether we were using Sandy v. Conner, Greenholtz, or Nevada law, or even the Olin v. Wakinakona cases as directed by this court. However, this appeal primarily concentrated on the liberty interest at issue. Now, in that, the Nevada district court statutory analysis under Sandy v. Conner noted that the state may inevitably affect the duration of sentence. The district court agreed with the report and recommendation that any miscalculation did not affect time served on the sentence, only when he would be considered for all, which is not a due process violation under Nevada state law. And with that, I want to convert to discussing when the Nevada Department of Justice, in this opening brief, makes the claims that Nevada law was clear under 209.4465 that Shaziza was entitled to recalculation immediately due to the Donsidewitz case in 2015. They claim repeated egregious clear ignoration, but I want to clarify this issue because it's very near in time to changes in the Nevada Supreme Court regarding rules that were germane to the binding precedent of unpublished decisions. At the time Donsidewitz was published in 2015, Nevada Supreme Court Rule 123, which was since rescinded, specifically stated, any unpublished disposition, while publicly available, may not be cited as precedent and does not establish mandatory precedent except for the subsequent stage of the case for which the order was entered, or related case, or any other cases for claim preclusion by the same parties. This rule would be rescinded in 2016, but the Supreme Court order which rescinded it specifically said that only unpublished dispositions after January of 2016 can be cited for persuasive value, not mandatory precedent. Donsidewitz was published in 2015. This rule specifically states cases before 2016 could not be cited for precedential value absent a request for publication, which was not made. And even though there was the petition for reconsideration after, the published disposition occurred in 2015, which was specifically when the Nevada Supreme Court had drawn a line of debarkation advising that those unpublished decisions could not be used for mandatory precedent. So when did the state file for a petition for rehearing on Bonk? Because it appeared to state when they, in that petition, claimed that this Donsidewitz case would have a big impact on parolees. So, you know, that seems like if it was an unpublished case, it wouldn't have that effect, but the state took the position that this case would have a large impact on the parole population, parolee population. The petition, the reconsideration filings were at the end of 2015. The dispositional order would come March of 2016. Again, you know, my point is I wasn't clear is, you know, it seems like the state was maybe talking both sides of their mouths, you know, and seeking a petition for bringing on Bonk, your position was that this unpublished case might have a large impact on prison population. And when that petition was denied, then state took the position, well, we'll have actually no impact because it's unpublished. And they were right. I mean, it eventually would have a significant impact that would come in via the Williams case in 2017. I would, I was obviously not on that, but I would, I would suggest that one could read the tea leaves that this decision would eventually be able to be considered for either a 14th Amendment due process or just a simple reevaluation of that, of that statute. So it was clear it would have an impact, but at that point, it appeared neither the court nor the state were ready to necessarily make the full decision to repeal that NRS. All right. And so going back to that, the... Another question. This was decided in summary judgment. Was discovery over in this case? Yes, Your Honor. The U.S. District Court for this case, for Chiziza, yes, it was over. There is nothing too significant, mainly press for production or auditories about the process of recalculating and exchange of documents. There was never any depositions under it or evidentiary hearings. There was no discovery on the parole board's decision, you know, when they ultimately denied his parole, you know, two years later. Was there any discovery into that, their decision-making process? No, Your Honor. The parole board was not actually... There was no parties from the parole board in this case. Nevada has kind of a unique bureaucratic structure in which the Division of Public Safety, which includes the parole board, is not actually part of the Department of Public Safety, which includes the Nevada Department of Corrections. So despite the naming requirements, they're completely different entities, different counsel, different wings of the government. So there was no parole parties in here and no Rule 45 subpoena type documents that might have gone through. Does the Nevada parole board issue a written decision explaining why it's denying parole? Pardon, Your Honor? Does the Nevada parole board issue a written decision explaining why it's denying parole? And if so, is that in the record? They generally do. It was not in the record. I mean, I understand it to be their pretty consistent practice. The Nevada Pardons Board is an administrative agency. So publicly available, but not as accessible as perhaps a court docket. With that, I would suggest that Vonside, which doesn't preclude anything, and the NDOC was not on notice that it immediately needed to recalculate every offender under that statute. And indeed, the Nevada Supreme Court has affirmed several instances of qualified immunity under Williams as the fall firm rather than Vonside. We would suggest that the reliance on present legal news is not applicable here because the Nevada State Supreme Court came later in time and created its own line of demarcation when unpublished orders would be used for presidential value. But with that, since time is flying a bit, I would like to go over to the O.M.V. Wakinakona instance. The alleged miscalculation of Chezise's credit did not affect the duration of a sentence, only when he might be considered for parole, which does not invalidate the duration of a sentence, as we discussed in the Nevada law. And this court issued the minute order asking what, if any, effect O.M.V. Wakinakona had on the matter. While the specific protected interest in O.M., the right to be sentenced and housed in a certain state, might not have a direct effect on this case, some of the Ninth Circuit jurisprudence that would spring from O.M. would subsequently provide guidance. I found a 1993 Ninth Circuit matter, Robert Kelch v. Director of NDOC, 10 F.3.D. 684, to be particularly instructive as to an inmate's liberty interest in this sort of case. And it used O.M. as the springboard for its analysis. Happily enough, this case also came from the District of Nevada on review, so it considered the same type of law regarding the grace of pardon. Now, under Kelch, it instructed that the relevant question per O.M. is whether the prisoner suffered a sufficiently grievous loss to trigger the protection of due process. They cited a Supreme Court example under Morrissey Brewer, 408 U.S. 471, giving an example, perhaps, that if the prisoner was granted parole, its termination would inflict a, quote, grievous loss. In Kelch, we had another example of what could be a grievous loss that would hit due process. In that matter, the prisoner obtained a commutation of sentence, an actual order from the Nevada Parole Board. That order would be rescinded later because there was errors by the District Attorney's Office regarding notice provisions and certain documents were not given to the parole board. They would rescind the commutation. The Kelch panel considered the inmate having a legitimate expectation of commutation of a sentence as a liberty interest rather than a unilateral hope. And they got that language from the Greenhold case now relied upon in the appellate briefs by Chiziza, which was not used in the D.C. pleadings. The inmates must have more than a unilateral expectation but a legitimate claim of entitlement. So that's our question under O.M. and Kelch. Is the nature of the interest at stake, the possibility of an earlier parole hearing, a grievous loss by the parolee? The misapplication of interest at issue is regarding entitlement to extra time credits, not the commutation or actual shortening of a sentence. None of the cases cited by Kelch or his progeny would show that an earlier date of parole hearing is a legitimate liberty interest that would entitle due process. This is a unilateral hope, not a legitimate claim. And as counsel said, we have no idea what might have happened at that parole hearing. There's not an actual grievous loss here. There's a hope that he might have had an earlier hearing, and a hope that a different decision would have been made. Another instructive case out of Pelham? What is your response to Appellant's argument invoking Miller v. Oregon Board of Parole? Is that case helpful or not? The case is instructive but not persuasive. And by that I mean that we have statutes. These are all separate statutes created by separate legislatures. Thus, Miller instructs us to do a statute-by-statute, case-by-case analysis to determine whether there is a protected interest. This NRS, under Nevada law, did not create any liberty interest. Also, Anselmo, discussed at the same time, did not provide any directives to the statute and is not applicable. So while Miller and Anselmo are instructive as to statutory analysis, I would suggest that the results reached in them does not have a direct effect on the statutory analysis of this sentencing statute. Is that because Miller used a matrix analysis? At a more macro level, yes. I would suggest that at an even more macro level, it's inapplicable because it's relying on Oregon statutes that I believe affirmatively created a liberty interest. The language here was a mess. While there is a must and a shall, this is an exception to a variance. We don't have express language that's creating anything. I mean, the fact that it takes over 100 pages of oversized briefing to say that two sentences are clear on their face kind of suggests to me that it's really not terribly clear on its face and that the Nevada Supreme Court needed two years of decisions to determine really how Von Seidrich was going to plan out. And the Olin cases like Greenholz, Carver, V. Lehman, 558F3D, it instructs that the inmate's interest in early release credits is limited. It doesn't end there because even if he's given their credits, he only had a unilateral hope of parole, not a legitimate expectation. And with my last couple of minutes, I just want to say that this is a confusing statute. The Williams case said the same. And the corpora of the Williams case, which eventually would overturn this, specifically addressed that there is no explicit mandatory language and no specific substantive predicates. There is no express language giving eligibility for parole. And the second problem is that interpreting the minimum-maximum aggregate to parole eligibility rendered the statute incompatible with others. So it's not a case where there's clear language ever created. So with that, gosh, I could go on forever now, but I see my time is done, so I would like to pass back to the clinic. Thank you very much, counsel. So I believe Ms. Gomez is going to appear here. There she is. All right. Ms. Gomez, whenever you're ready, you may proceed. Thank you, Your Honors, and may it please the Court. My name is Ilse Gomez, and I am a co-counsel along with Ben, representing Mr. Hasiza. I'd like to address three points made by Mr. Todry. First, I'd like to talk a little bit more about Olam and why that is distinguishable from the protected liberty interest that's at stake here. Next, I'd like to address Bonsaitovitz and how that decision did actually provide defendants with notice about what their duty was to plaintiff. And finally, I'd like to talk a little bit about Miller and Selma and exactly what they tell us about the statutes at issue here. So starting with Olam, we did not have the opportunity to brief the cases that Mr. Todry is referencing, but I would like to point the Court to other cases that have been decided by the Supreme Court of the United States that actually tell us that parole eligibility is what Mr. Todry called an egregious loss, or a nature of interest is an egregious loss, and we can say that it is. First, we'd like to point the Court to Warden v. Morero, which is 417 U.S. 653, and that was the Court deciding that the denial of a prisoner's parole eligibility violated the ex post facto clause because the Court considered parole eligibility was very important, stating that only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole. I'd also like to point the Court to Grandview, Florida, which is 560 U.S. 48, and that was the Court considering the life without possibility of parole versus life with possibility of parole for juveniles, and the Court basically stated that parole consideration was incredibly important, even where parole itself was not guaranteed, and denial of parole eligibility was essentially a denial of hope. And finally, I'd like to address the Supreme Court decision in Wolf v. McDonnell, which is 418 U.S. 539, and that was postponing the date of eligibility for parole was important for deciding that credits for a prisoner were a protected liberty interest because they made it unquestionably a matter of significant importance. So as we can see from those decisions, it's actually a much more substantial interest and not just a process for process's sake, as stated in Olim. I'd also like to address Mr. Chowdhury's position that they were not on notice because Fonseca Woods was unpublished in 2015. Fonseca Woods was unique in its unpublished status. First, it was the NDOC's position in their petitions that this would actually affect a large group of prisoners, and in their denial of these petitions, the full court of the Nevada Supreme Court, which is the ultimate arbiter of Nevada law, stated that, yes, it was going to affect this large category of prisoners, and then they explicitly published an order that said these are the prisoners that this is going to affect, which Mr. Azusa fell into all of those categories. Further, the fact that this is a legal opinion, they were interpreting a statute, and it would not make sense to think that the Nevada Supreme Court intended for a statute to only apply to the prisoner in the Fonseca Woods case. The statute would be applying to a broader swath of prisoners, which they specifically categorized with the order that they published with their denial, stating all the categories of prisoners. Therefore, this is a unique case in which the Fonseca Woods order, though unpublished in 2015, was applicable and did put defendants on notice. And finally, I'd just like to talk about Miller and Anselmo. They did not take these statutes and create the rights. We're not arguing that Miller and Anselmo created these rights. We're simply looking to Miller to tell us that Greenholtz and Allen is the proper framework under which to analyze the statutes, and further, that in the parole context, the statutes do create a liberty interest when there is a mandatory entitlement with or without conditions. Anselmo tells us that that is exactly the case in Nevada law, because despite the disclaimer that we find in the statutes, Anselmo found that there was a protected liberty interest separate from that disclaimer that created a protected liberty interest in being considered for parole or being parole eligible. That's exactly what the statutes here tell us. And I see that I'm at time, but if I may, the statutes that are relevant here are NRS 213.131 and 213.140, which, contrary to Mr. Chaudry's position, they actually do say that the NDOC shall determine the prisoner's eligibility for parole, and they shall then refer the prisoner to the board. And then the board is then required to consider the prisoner for parole. And if no further questions from the court, I'd be happy to submit. All right, thank you very much, counsel. Thanks to all, usually I say both, but in this case, I'm going to say thanks to all of counsel for their fine briefing and argument in this case. Again, I want to thank the UCLA Clinic for giving students an opportunity to argue and always doing so very professionally. This matter is submitted, and now we'll move on to the final case for today. Thank you for your time. Absolutely. The Cahill v. Etelat case.
judges: Owens, Simon, Lee